Filed 3/8/23  P. v. Sanchez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077029 |
| v. | (Super.Ct.No. INF1501718) |
| MARIO ALBERTO SANCHEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James T. Latting, Judge.

Affirmed in part, reversed in part, and remanded with directions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland , Assistant Attorney General, Steve Oetting, Warren J.

Williams and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Mario Alberto Sanchez was convicted of attempted

murder and other crimes stemming from a gang-motivated home invasion.  On appeal, he

1

contends that two recently enacted laws entitle him to relief: Assembly Bill No. 333 (2021-2022 Reg. Session) (Assembly Bill 333), which narrowed the applicability of enhancements for offenses involving a criminal street gang, and Senate Bill No. 567 (2021-2022 Reg. Session) (Senate Bill 567), which among other things reduced a trial court's discretion in imposing an upper term at sentencing. He also contends that he should be permitted a hearing under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). The People concede on all these issues.

We previously decided the appeal of the conviction of Sanchez's codefendant, Andres Baylon, on crimes stemming from the same home invasion. (*People v. Baylon* (Oct. 19, 2022, E074444) [nonpub. opn.] (*Baylon*).) Baylon raised the same arguments as Sanchez regarding Assembly Bill 333 and Senate Bill 567 but did not contend that he was entitled to a *Franklin* hearing. (*Baylon*, *supra*, E074444) We agreed that Baylon was entitled to the benefits of Assembly Bill 333 and Senate Bill 567. (*Baylon*, *supra*, E074444.)

We reach the same conclusions here, holding that Sanchez is entitled to the benefits of both laws. We also hold that Sanchez is entitled to a *Franklin* hearing to establish a baseline of his characteristics and circumstances for a future parole board hearing.[1]

---

[1] Undesignated statutory references are to the Penal Code.

# I.  BACKGROUND

We briefly restate the factual background of the crimes here from our unpublished opinion in *Baylon*:

"One night in 2015, Diana Cruz was sleeping in her living room when [defendant] Sanchez woke her up.  Sanchez struck Cruz on the head with a pistol, and when Cruz stood up, Sanchez struck her with the pistol again.

"Stephen Aguirre, Cruz's boyfriend, was sleeping in the bedroom.  He opened the door and saw Sanchez along with [codefendant] Baylon in the living room.  Aguirre knew the two, as in the past Sanchez and Baylon would sometimes go to Aguirre's house to 'kick[] back' and smoke marijuana.  Aguirre had also sold them marijuana on occasion.  Aguirre knew Sanchez to be a member of the VIR gang.

"Sanchez demanded that Aguirre hand over marijuana and money.  Aguirre resisted, and Baylon shot Aguirre in the chest.  Aguirre turned to reach for a baseball bat and was shot again.  Sanchez grabbed Aguirre and told him:  'This is what you get for dealing with our enemies from . . . nut sack . . . Campo-rachas . . . and booya town.' [Aguirre explained at trial that the terms referred to 'North Side,' 'farm labor camp,' and 'Coachella 52 and 53' respectively, which were other gangs.]  Aguirre understood [Sanchez's statement] to mean that he 'had no business selling to their enemies.' Sanchez then struck Aguirre in the head with a pistol.  Baylon and Sanchez took marijuana, a cell phone, and $100 from Aguirre and Cruz.  They also demanded and took

3

cell phones from a couple sleeping inside another bedroom in the house." (*Baylon*, *supra*, E074444.)

Sanchez was charged with attempted murder (§§ 664, 187, subd. (a)), robbery (§ 211), assault with a firearm (§ 245, subd. (a)(2), and burglary (§ 459). Among other special allegations, the People alleged that Sanchez committed each offense for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(1)(C).) The People also alleged a strike prior. (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c).) Sanchez and Baylon were tried together. (*Baylon*, *supra*, E074444.) The jury convicted Sanchez on all charges and found the gang enhancement allegations true. Sanchez later admitted the prior strike allegation and was ultimately sentenced to an aggregate term of 23 years plus 30 years to life.

## II. DISCUSSION

After Sanchez's sentencing, the Legislature enacted Assembly Bill 333 and Senate Bill 567. We briefly address Sanchez's contentions regarding each as well as his contentions regarding a *Franklin* hearing.

### A. *Assembly Bill 333*

Section 186.22 enhances the punishment of a person convicted of an enumerated felony committed "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b)(1), (4).) Assembly Bill 333 narrowed the definition of "criminal street gang." What used to be defined in part as "an ongoing organization,

4

association, or group of three or more persons . . . whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity" (former § 186.22, subd. (f)) is now defined in part as "an ongoing, *organized* association or group of three or more persons . . . whose members collectively engage in, or have engaged in, a pattern of criminal gang activity" (§ 186.22, subd. (f), italics added). Assembly Bill 333 also raised the bar for proving a "pattern of criminal gang activity," which is needed to establish a criminal street gang, in various ways. Relevant here is that predicate offenses must now be proven to have "commonly benefitted a criminal street gang, and the common benefit of the offense[s] is more than reputational." (Assem. Bill 333, § 3, revised § 186.22, subd. (e)(1).)

Assembly Bill 333 applies retroactively to Sanchez; his judgment will not be final when the amendments take effect, and the People concede that this portion of Assembly Bill 333 is retroactive. (See *People v. Lopez* (2021) 73 Cal.App.5th 327, 344.)

Furthermore, Sanchez may be able to benefit from these changes. As the People correctly concede, there is no evidence in the record to show that the common benefit of VIR's predicate offenses was "more than reputational." Accordingly, we reverse the gang enhancement findings and remand to permit the prosecution to retry the enhancements under the new standards.

B. *Senate Bill 567*

When Sanchez was sentenced, the trial court had broad discretion under section 1170 to impose the lower, middle, or upper term of imprisonment for an offense. (See

former § 1170, subd. (b); *People v. Whitmore* (2022) 80 Cal.App.5th 116, 131 (*Whitmore*).)  Here, the trial court imposed the upper term for each offense.

"Senate Bill 567 amended section 1170 in several respects.  Relevant here is the fact that section 1170, subdivision (b), now makes the middle term the presumptive sentence unless certain circumstances exist, such as if 'there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial.'  (§ 1170, subd. (b)(2).)"  (*Whitmore*, *supra*, 80 Cal.App.5th at p. 131.)  However, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)

The People correctly concede that the changes to section 1170, subdivision (b) apply retroactively to Sanchez.  (See *Whitmore*, *supra*, 80 Cal.App.5th at p. 131.)  The People also correctly acknowledge that the trial court may revisit its decision to impose the upper terms in light of Senate Bill 567 because Sanchez is entitled to resentencing under Assembly Bill 333 in any event.  This is because "'when part of a sentence is stricken on review, on remand for resentencing "a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances."'"  (*People v. Jones* (2022) 79 Cal.App.5th 37, 45-46.)  "A full resentencing may involve the trial court's revisiting such decisions as . . . whether to

impose an upper, middle, or lower term." (*Id.* at p. 46.) Moreover, section 1170 as amended generally allows for a bifurcated trial on aggravating circumstances. (§ 1170, subd. (b)(2) ["Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements"].)[2] Senate Bill 567's changes apply to Sanchez on remand.

C. Franklin *Hearing*

"[T]he California Legislature passed Senate Bill No. 260 (2013-2014 Reg. Sess.), which became effective January 1, 2014, and enacted sections 3051, 3046, subdivision (c), and 4801, subdivision (c), to provide a parole eligibility mechanism for juvenile offenders." (*People v. Perez* (2016) 3 Cal.App.5th 612, 618.) "Section 3051 gives 'youth offenders' committed to long prison sentences parole suitability hearings beginning in their 15th, 20th, or 25th year of incarceration, depending on the circumstances. (§ 3051, subds. (a)-(b).)" (*People v. Miranda* (2021) 62 Cal.App.5th 162, 181.) "Originally, section 3051 applied only to those who were juveniles (i.e., under 18) at the time they committed a 'controlling offense,' the 'offense or enhancement for which any sentencing court imposed the longest term of imprisonment.'" (*Id.* at pp. 181-

_____

[2] Of course, this only becomes pertinent if the prosecution chooses to again seek the upper term on any of the charges. (See *Whitmore*, *supra*, 80 Cal.App.5th at p. 132 ["Before resentencing, the trial court must give the prosecution an opportunity to elect whether to accept resentencing on the current record or seek an upper term sentence in compliance with newly amended section 1170, subdivision (b)"].)

7

182.)  "Section 3051 was then expanded over time to make those who were younger than 23, and then those who were 25 or younger, at the time of the controlling offense to be eligible for parole hearings as well."  (*Id.* at p. 182.)  Sanchez was 23 at the time of the crimes here.  However, those sentenced under the Three Strikes Law, such as Sanchez, are excluded from section 3051.  (§ 3051, subd. (h).)[3]

Nevertheless, as *People v. Delgado* (2022) 78 Cal.App.5th 95 (*Delgado*) recently held, a so-called *Franklin* hearing applies to defendants in Sanchez's position, even though *Franklin* specifically dealt with section 3051.  As *Delgado* explained:

"In *Franklin*, the California Supreme Court discussed the import of section 3051 when it applies.  As the court pointed out, the statute contemplates the parole board will consider 'youth-related factors, such as [the juvenile offender's] cognitive ability, character, and social and family background at the time of [his] offense,' in determining his suitability for parole.  (*Franklin*, *supra*, 63 Cal.4th at p. 269.)  Therefore, 'section 3051, subdivision (f)(2) provides that "[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about

---

[3]  The California Supreme Court is currently considering whether other exclusions from section 3051—specifically, those sentenced under the One Strike law and those sentenced to a life sentence without the possibility of parole for a controlling offense committed when 18 or older—violate equal protection.  (See *People v. Hardin* (2022) 84 Cal.App.5th 273, review granted January 11, 2023, S277487 [life sentence without the possibility of parole]; *People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, S262229 [One Strike law].)  However, neither of these would apply to Sanchez, and he does not raise a similar equal protection challenge here.

the individual before the crime . . . may submit statements for review by the board."' (*Id.* at p. 283.)

"*Franklin* further stated, 'Assembling such statements "about the individual before the crime" is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away.' (*Franklin*, *supra*, 63 Cal.4th at pp. 283-284.) In addition, the parole board must consider any '"psychological evaluations and risk assessment instruments"' that may be relevant to show '"any subsequent growth and increased maturity of the individual."' (*Id.* at p. 284, quoting § 3051, subd. (f)(1).) Our Supreme Court found this 'implies the availability of information about the offender *when he was a juvenile*.' (*Ibid.*, italics added.)" (*Delgado*, *supra*, at pp. 100-101.) "Accordingly, the Supreme Court remanded the case to allow the trial court" to make such a record. (*Id.* at p. 101.)

*Delgado* held that even youth offenders excluded from youth parole suitability hearings under section 3051 are entitled to *Franklin* hearings because of section 4801, subdivision (c), "which was enacted in conjunction with [section] 3051." (*Delgado*, *supra*, 78 Cal.App.5th at p. 103.)

"Like section 3051, section 4801, subdivision (c) was enacted in 2014 as part of the Legislature's effort to bring California law into conformity with Supreme Court precedent respecting juvenile sentencing. [Citation.] That subdivision provides, 'When a prisoner committed his or her controlling offense, as defined in subdivision (a) of Section

9

3051, when he or she was 25 years of age or younger, the board, in reviewing a prisoner's suitability for parole pursuant to Section 3041.5, shall give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law.' (§ 4801, subd. (c).)

"Section 3041.5 sets forth the procedures governing parole hearings and applies generally to 'all [such] hearings.' (§ 3041.5, subd. (a).) It is apparent from the Legislature's reference to that statute that it intended the criteria set forth in section 4801, subdivision (c) to apply broadly to all parole hearings, not just [youth offender parole hearings]. [Citations.] Consequently, even though appellant is not entitled to a [youth offender parole hearing], the parole board will still—someday—have to consider his diminished capacity and subsequent maturation in assessing his suitability for parole. [Citation.]

"Those are the same factors the board must consider in conducting a [youth offender parole hearing] under section 3051. Given their importance at appellant's parole hearing, it follows from *Franklin* that he should be given the opportunity to make a record of those factors." (*Delgado*, 78 Cal.App.5th *supra*, at p. 103; see also *In re Brownlee* (2020) 50 Cal.App.5th 720, 725 ["section 4801, subdivision (c) is not limited to youth offender parole hearings—it applies to all parole hearings"].)

In 2021, when Sanchez was sentenced, *Franklin* had been decided, but *Delgado* had not. Before sentencing, Sanchez requested a *Franklin* hearing, but at sentencing

requested to take the motion for a *Franklin* hearing off calendar without prejudice because it "appear[ed] that [he was] not currently eligible for the *Franklin* hearing." Because *Delgado* was decided only after Sanchez's sentencing, we agree with the parties that he should be allowed a *Franklin* hearing now.

## III.  DISPOSITION

The findings on the gang enhancements are reversed and the sentence is vacated. The matter is remanded for the trial court to (1) provide the prosecution an opportunity to retry the gang enhancements under the law as amended by Assembly Bill 333; (2) provide the prosecution an opportunity to seek upper term sentences under the law as amended by Senate Bill 567; (3) conduct a *Franklin* hearing, if Sanchez requests one; and (4) after any retrial, or on remand if the prosecution elects not to conduct a retrial, resentence Sanchez.  The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

MILLER_____
Acting P. J.

SLOUGH_____
J.